360 So.2d 582 (1978)
Frank Michael JACKSON and Frank J. Jackson
v.
William W. WATSON, William W. Watson, Jr., Bill Watson Ford, Inc., United States Fidelity & Guaranty Company and Fidelity & Guaranty Insurance Underwriters, Inc.
No. 9183.
Court of Appeal of Louisiana, Fourth Circuit.
June 13, 1978.
Rehearing Denied July 26, 1978.
*583 Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Harvey L. Strayhan, New Orleans, for plaintiffs-appellants.
Montgomery, Barnett, Brown & Read, Daniel Lund, New Orleans, for defendants appellees.
Before SAMUEL, REDMANN and STOULIG, JJ.
SAMUEL, Judge.
Plaintiff, Frank Michael Jackson, filed suit against defendants, William W. Watson, William W. Watson, Jr., Bill Watson Ford Company, United States Fidelity and Guaranty Company, and Fidelity & Guaranty Insurance Underwriters, Inc., the liability insurers of defendants, for damages resulting from personal injuries sustained while he was riding on a wooden sled being pulled by a rope attached to the back of a pickup truck. Plaintiff's father, Frank J. Jackson, was joined as plaintiff to recover medical expenses incurred by him for the treatment of his adult son. Hereinafter the younger, injured Jackson is referred to as "plaintiff".
Defendants answered, denied liability on their part, and pleaded contributory negligence *584 and assumption of risk on the part of plaintiff.
The case went to trial before a jury, and at the conclusion of the trial plaintiffs voluntarily dismissed the defendant corporation. The jury returned a verdict in favor of plaintiff against William W. Watson, Jr. and the two insurance companies, and judgment was rendered in accordance with the verdict.
The defendants cast filed a motion for a new trial with supporting memorandum in which they urged numerous grounds, including alleged errors by the jury in finding Watson negligent, in not finding the plaintiff contributorily negligent, and in rendering a verdict which was unconscionably high, and by the trial judge primarily regarding alleged errors or omissions in his charge to the jury. In due course, the trial judge rendered judgment granting defendants a new trial.
Plaintiffs then filed an application for supervisory writs in this court, seeking reversal of the judgment granting a new trial. We denied the application on the ground that under the circumstances shown the ruling of the trial judge appeared to be within his discretion.[1]
Subsequently, the case was retried before a jury in its entirety. Following the second trial the jury returned a verdict in favor of all defendants and against both plaintiffs. Judgment was rendered in accordance with the verdict, dismissing plaintiffs' suit. Plaintiffs have appealed.
On February 3, 1973, William Watson, Jr. was the host of a bachelor party for his friend, one Robert Schroeder. The party was held on property owned by Watson's father in Poplarville, Mississippi. He conditioned permission to hold the party on his driving his son and guests from New Orleans to Poplarville and back in a truck or similar vehicle so that no problems would result from the participants driving while intoxicated. Each of the participants in the party was near or over 21 years of age and the record establishes that all were over the age of majority.[2]
At this point the testimony becomes contradictory. It is nevertheless agreed that the party began in New Orleans between 9 and 9:30 a. m. when defendant and his guests boarded the van truck to be driven to Poplarville. The evidence indicates the young men began drinking when they entered the van and that they consumed quantities of beer on the way to the party. It need hardly be said the amount of alcohol consumed is in dispute. After they arrived in Poplarville, the drinking continued, and one of defendants' witnesses indicated the beer mugs were kept full at all times. While the evidence is again conflicting, there is much testimony to establish the participants to the party, including the plaintiff, were all soundly under the influence of alcoholic beverages.
Between 1:30 and 2 p. m., a wooden sled, consisting of a three-by-four piece of plywood, was tied to the back of a pickup truck by means of a rope. The evidence indicates plaintiff insisted on being first to ride, and he was required by Watson, Jr. to put on safety equipment, including a motorcycle helmet, goggles, heavy gloves, and jacket. He was also instructed to roll off the sled in the event any problem should arise, and he would be protected from injury by the heavy-duty motorcycle protective gear.
There is testimony by persons who had ridden the sled in this fashion that the rider of the sled was not without some control over his direction, since the friction between the sled and the ground allowed the rider some control over direction of the sled as it followed the truck by shifting weight from one side to the other. Consequently, the degree of an arc described by the sled when the truck made a turn could be reduced by the rider's shifting his weight in the appropriate direction.
Watson, Jr., without the knowledge or acquiescence of Watson, Sr., drove the *585 truck down a pasture alongside a stand of trees. Plaintiff could not estimate the speed of the vehicle, but Watson, Jr. testified he proceeded no faster than 10 to 15 miles per hour in a straight path and slowed to 5 miles per hour on turns. His testimony was corroborated by other witnesses.
Plaintiff did not remain in either a seated or prone position on the sled, but instead stood up while it was moving. As the truck went into a left turn, which defense witnesses described as slow and gradual, plaintiff leaned his weight in the direction of the turn, thereby forcing the sled to slide out further to his right and describe a wider arc than it would have if he had either maintained his weight in the center of the sled or shifted it to the left. During the process of this turn, both the sled and plaintiff struck a tree, resulting in plaintiff's injuries.
It suffices to say that there is much testimony regarding the vast amount of alcohol allegedly consumed by Jackson. On the other hand Jackson testified he had not consumed enough alcohol to impair his mental or physical faculties to any extent.
The first issue sought to be posed by appellants for this court's consideration is whether the trial court committed error by granting defendants' motion for a new trial. We cannot consider that issue on appeal. Our long established jurisprudence, both under our present Code of Civil Procedure and its predecessor the Code of Practice is that a trial court order granting or denying a new trial is not appealable; it is reviewable only under the appellate courts' supervisory jurisdiction for abuse of discretion.[3] Here, as has been pointed out, this court has denied an application seeking reversal of the judgment granting the new trial.
The issue we must and do consider is whether the verdict of the second jury in favor of defendants is contrary to the law and the evidence. Stated another way, we must determine whether the evidence contained in the record furnishes a reasonable factual basis for the jury's verdict.
The test to be applied by an appellate court on reviewing a decision of a trial court was set forth clearly and concisely in Canter v. Koehring Company[4] as follows:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
Upon the authority of Canter v. Koehring Company, this court has stated that in dealing with a jury verdict of liability we are limited in our scope of review to the question of whether there is evidence in the record which furnishes a reasonable factual basis for that verdict.[5] Here the record contains ample evidence which, although *586 in conflict with some of the other evidence, furnishes such a reasonable factual basis both as to negligence, or lack thereof, on the parts of both Watson, Jr. and the plaintiff.
Plaintiffs also argue the verdict is contrary to the law and the evidence because the jury was not afforded the benefit of statements by the witnesses during the first trial which they contend contradict statements made by them in the second trial. The record shows no attempt by plaintiffs to introduce evidence of prior contradictory testimony, and plaintiffs merely state in brief that the trial judge had said a mistrial would be declared should any mention be made of a previous trial in the presence of the jury.
Prior contradictory statements given in a proceeding between the same parties can be used to contradict or impeach the testimony of witnesses when proper foundation has been laid for such an attack.[6] However, the record does not indicate plaintiffs attempted to impeach the witnesses and it appears the testimony given at the first trial had not been reduced to writing at the time of the second trial, thereby rendering their ability to impeach by virtue of prior inconsistent statements somewhat doubtful. In addition, if plaintiffs had desired to contradict the testimony of the witnesses, it was incumbent upon them to take whatever proceeding necessary to place in the record the admonition of the trial judge that a mistrial would be granted upon mention of a prior trial. We are bound by the record and the absence of such evidence in the record prevents our giving consideration to plaintiffs' argument.
Finally, plaintiffs argue the trial judge's charges to the jury were deficient and improper. On appeal they specify two such alleged improprieties. First, they allege the trial judge committed error by not charging the jury on the doctrine of last clear chance. For the application of this doctrine, three criteria must be satisfied. First, it must be shown plaintiff was in a position of peril of which he was unaware or from which he was unable to extricate himself. Second, the defendant was in a position to discover plaintiff's peril. And third, when defendant did in fact discover plaintiff's peril, he had reasonable opportunity to avoid the accident. In the present case plaintiff was able to extricate himself from that position had he used a minimum of care in watching approaching objects. The evidence indicates, and plaintiff does not seriously contest, that the rider of the sled had some control over it by shifting his weight from one side to the other in order to guide his direction, particularly on curves. Plaintiff was clearly able to extricate himself from his position of peril either by shifting his weight on the sled or by jumping off the sled as he was originally instructed to do when furnished with the helmet and other safety equipment. Under these circumstances, it is not necessary for us to consider the other elements of the last clear chance doctrine to determine the trial judge did not commit error for not giving the charge based upon it.
Finally, plaintiff complains of an instruction given the jury by the trial judge which stated that Watson, Sr. was under no duty to supervise or control the actions of any of the participants in the party, that each of the participants are to be judged according to adult standards, and that at the time of the accident all participants were to be judged as adults because they were over the age of 18 years. Plaintiffs are incorrect in their assertion that this charge approached a directed verdict in favor of Watson, Sr. Immediately prior to the charge complained of, the trial judge instructed the jury that plaintiff could recover against Watson, Sr. if he were guilty of personal negligence, but that he could not be held liable to plaintiff merely because he owned or was present on the property on which plaintiff was injured. This is a correct statement of Louisiana law and when the charge complained of is taken in context with the immediately preceding *587 charge, it is clear the trial judge did not commit error in charging the jury in the respects complained of by plaintiff on appeal.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
REDMANN, J., dissents with written reasons.
REDMANN, Judge, dissenting.
Because Frank Jackson had no experience with the alleged applicability of hydrodynamic principles of water-skiing to boardsledding on solid earth pasture, he cannot be charged with unreasonable behavior (contributory negligence) for shifting or failing to shift his weight so as to affect his sledding path. William Watson, Jr., on the other hand, from his experience knew or should have known that the sledder's shifting his weight could cause the sled to move out to the right or left from the path of the towing truck, so that driving the truck too close to trees would endanger an inexperienced sledder. If, therefore, Jackson's mishap resulted from his shifting [or failing to shift] his weight and causing the sled to deviate from the truck's non-collision course, Jackson cannot be held contributorily negligent unless for consenting to be towed by a driver known by Jackson to be so drunk that collision was probable (and therefore its risk assumed).
The same conclusion obtains if (as seems more likely) the effect of weight-shifting on the sledder's path is not a factor, and the accident occurred simply because Watson, Jr. drove the truck on a collision course for the sled and sledder. Apparently the truck drove so far into the apex of the triangular ("pie-shaped") clearing that the sled and sledder's momentum altered in direction until reversed by centripetal force from the U-turning truck hurled them, at greatly increased speed as in the cracking of the tip of a whip, into the too-close trees. Because of the short distances (limited by the 30foot tether) and short times involved, and because the towing truck (plus the thrownup dust and grass particles) obscured the sledder's view, Jackson cannot be contributorily negligent for his failure to realize early the imminence of collision and for his consequent failure to abandon the sled (a course appearing to the person of ordinary prudence like that from frying pan into fire, of quite doubtful efficacy in any case because the sledder's momentum's direction is the same as the sled's). Accordingly, if the accident occurred (as seems most probable) because Watson drove the truck too close to the trees while turning, Jackson's only possible contributory negligence was consenting to being towed by an obviously drunk driver.
But Watson, if drunk, cannot have been so obviously drunk that Jackson should have foreseen some collision as probable. Watson's own evidence is that he continued both to drive (towing the sled) and to drink the rest of the day without incident.
Jackson should recover from Watson, Jr.
NOTES
[1] The application for writs bears No. 7845 of the docket of this court.
[2] Majority in Louisiana is 18 years. LSA-C.C. Art. 37.
[3] Code of Practice Article 566; Code of Civil Procedure Article 2083; Foster v. Kaplan Rice Mill, 203 La. 245, 13 So.2d 850; Bland v. Government Employees Ins. Co., La., 334 So.2d 231; Miller v. Chicago Insurance Company, La., 320 So.2d 134; Bunge Corporation v. Emmons, La.App., 320 So.2d 230; Simmons v. Beauregard Parish School Board, La.App., 284 So.2d 668; Pate v. Crescent Motors Exchange, Inc., La.App., 256 So.2d 471.
[4] La., 283 So.2d 716, 724.
[5] Reggio v. Louisiana Gas Service Company, La.App., 333 So.2d 395, 406. See also Perrin v. St. Paul Fire & Marine Ins. Co., La.App., 340 So.2d 421, and Garrison v. Hotel Dieu, La.App., 319 So.2d 557.
[6] See, for example, Jackson v. City of Baton Rouge, La.App., 286 So.2d 743.