LOBRANO, Judge.
The instant appeal arises as a result of a collision between an automobile and a motorcycle which occurred on September 6, 1977 at the intersection of Elysian Fields Avenue and New York Street in the City of New Orleans. The automobile was driven by defendant-appellant, Salvator Ferrara, (hereinafter Ferrara), and the motorcycle was driven by plaintiff-appellee, Gary E. Picou (hereinafter Picou).
Picou filed suit against Ferrara, Fer-rara’s insurer, American Indemnity Insurance, and his employer Ferrara, Inc. Prior to the trial of this matter Ferrara died and his succession, through the testamentary executor Brian A. Ferrara, was substituted as party defendant. On March 10, 1983, in conformity with the verdict of the jury, judgment was rendered in favor of Picou in the amount of $283,500.00. Specifically, the jury found both Ferrara and Picou negligent, but also found that Ferrara had the last clear chance to avoid the accident.
All parties have appealed. Ferrara specifies numerous errors in the trial court, and Picou requests an increase in the award as well as a reversal as to his contributory negligence. After a review of the briefs and the record, we perceive the crucial issue to be whether or not the doctrine of last clear chance is applicable to the facts of this case.
The accident occurred between 9:20 and 9:40 a.m. on a bright sunny day. Ferrara, after transacting business at the Hibernia Bank on Elysian Fields Avenue, backed out of the bank parking lot and proceeded north on Elysian Fields, a four lane divided roadway, toward the intersection of New York Street where he was to turn left. New York Street is approximately 256 feet from the Hibernia Bank. The evidence is clear that Ferrara was in the right hand lane initially. His speed was somewhere between 10 and 20 miles per hour.
Picou was traveling in the same direction on Elysian Fields toward the University of New Orleans where he had a 9:40 a.m. class. He was traveling in the left hand lane at a speed of 33 to 35 miles per hour as he approached the Ferrara vehicle. Pi-cou asserts that when the front wheel of his motorcycle reached the front door of the Ferrara vehicle, Ferrara made a sharp left turn and collided with his motorcycle. Ferrara asserts he made a left turn on to New York Street from the left lane of Elysian Fields which he fully occupied prior to reaching the intersection and that Picou attempted to pass him on his left between the car and the neutral ground. Therein lies the factual dispute.
The test to be applied by an appellate court in reviewing a decision of the trial court has been set forth clearly and concisely in Canter v. Koehring Co., 283 So.2d 716 (La.1973) as follows:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Id at 724.
When the trial court judgment is based on a jury verdict we are limited in our scope of review to the questions of whether there is evidence in the record which furnishes a reasonable factual basis for that verdict. Jackson v. Watson, 360 So.2d 582 (La.App. *1221 4th Cir.1978). Since the evidence is conflicting in this case, a review of the pertinent testimony is necessary.
Picou testified that he was proceeding in a northerly direction on Elysian Fields Avenue at a speed of 35 miles per hour. At all times prior to the accident he was in the left hand lane. At approximately the intersection of Robert E. Lee Blvd. and Elysian Fields he saw a gold colored car (Ferrara’s vehicle) back out of the Hibernia Bank parking lot and into the right lane of Elysian Fields. Immediately thereafter, he noticed Ferrara signaling with his left blinker light, presumably to change lanes. Picou testified Ferrara was traveling no more than 10 miles per hour. When he got within 5 to 10 feet of the rear of Ferrara’s vehicle he (Picou) was trying to decide if Ferrara was going to come over in the left lane, as he had not made a move to do so at that point. Picou stated he engaged the clutch of his motorcycle, but kept coasting until the front wheel of his motorcycle was even with the front door of Ferrara’s vehicle. At this point he was approximately eight inches from the curb, and his speed had been reduced by about 2 to 3 miles per hour. Just prior to the impact he testified that he had eye to eye contact with Fer-rara, and that the subsequent collision happened within a split second. He testified:
“When we were side by side it happened so quick that we were right at the corner, because within a split second the car turned and me I was over to the curb, as far as I could go. I couldn’t avoid going nowhere else. It happened all within a short distance of ten feet of impact.”
Ferrara’s deposition was read to the jury, and his version of the accident is as follows. After transacting business at the Hibernia Bank he backed out of the parking lot into the right hand lane of traffic on Elysian Fields. He then looked through the rear view mirror, the side view mirror and through the rear of his car, and upon observing a clear path he put on his left turn signal and began moving into the left lane. Once in the left lane, he kept his blinker light on to indicate a left turn on New York Street. Upon reaching the intersection of New York Street he began to turn left and at that moment was struck by Picou. He stated he did not see Picou until the impact, and only heard his horn after the collision.
Mark Bihn, the only eye witness to the accident testified that he was traveling in the right lane of traffic on Elysian Fields behind the Ferrara vehicle prior to the collision. He testified that he observed Fer-rara look to his rear before changing to the left hand lane and that Ferrara had his left turn signal on the entire time he was making the change from the right to the left hand lane. It was his testimony that Fer-rara was in the left lane when he made the left turn on New York Street, and that the motorcycle was attempting to pass Ferrara between the curb and the car. He remembered thinking that the motorcycle would make it through the space between the curb and the car but when he saw Ferrara begin to turn he knew both vehicles would collide. Although his testimony differed somewhat from his previous deposition, he was positive at trial that Ferrara was totally in the left lane prior to his left turn. He testified:
“Q. Did you ever see Mr. Ferrara just prior to New York execute a left hand turn from the right lane?
A. No, Sir.
Q. Are you positive of that?
A. Yes, Sir, I am.”
Dr. Robert Ehrlich, an expert in accident reconstruction, testified on behalf of Fer-rara. Using measurements of the scene of the accident obtained by Picou’s own civil engineer, and the testimony of Picou, Fer-rara and Bihm, he calculated the time it would take Ferrara to turn left from the right lane to the point of impact. He then calculated the distance Picou would have traveled at his stated speed within that length of time. His conclusion was that in the time it would have taken Ferrara to turn left from the right hand lane, Picou would have traveled beyond the point of impact and the accident would not have occurred. On the other hand, the time it *1222 would take Ferrara to turn left from the left lane to the point of impact would place Picou at the actual point of impact.
He further testified that there was no physical evidence of metal to metal contact or rubber to metal contact. This caused him to conclude that the impact was a glancing blow of 10 to 20 degrees rather than a sharp collision at closer to a 90° angle. This finding reinforces his overall conclusion that Ferrara turned from the left lane rather than the right, thus negating Picou’s claim.
Furthermore, Dr. Ehrlich concluded that given the slow rate of speed of Ferrara and the fast rate of speed of Picou, he (Picou) closed a distance of as much as 1700 feet within seconds from the intersection of Robert E. Lee to the point of impact. Thus, when Ferrara looked to his rear before changing lanes, Picou was not in sight.
Larry C. Harry testified in rebuttal on behalf of Picou as an expert in traffic safety and engineering. A summary of his testimony is basically that Ferrara had three manuevers to execute. He first had to back out of the parking lot, second he had to change lanes, and third, he had to make a left hand turn. Harry’s opinion was that the distance from the Hibernia Bank to New York Street was not sufficient to safely perform those three man-uevers.
NEGLIGENCE OF THE PARTIES
The jury concluded that both Picou and Ferrara were negligent, but that Fer-rara had the last clear chance to avoid the accident. Based on the evidence in the record, and in particular the testimony we have summarized herein, we cannot say that the jury was manifestly erroneous in finding both parties negligent. There is ample evidence to support those factual conclusions. Canter v. Koehring Co., supra; Jackson v. Watson, supra. However we must disagree with their finding that the last clear chance doctrine applies.
The last clear chance doctrine is an exception to the general rule of law which prevents a plaintiff from recovering where he is found to be contributorily negligent.[1] Under this doctrine a defendant is liable to the plaintiff despite plaintiffs own negligence. Miller v. Carter, 346 So.2d 748 (La.App. 1st Cir.1977). For this doctrine to apply three criteria must be satisfied:
1. It must be shown that plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself.
2. The defendant was in a position to discover plaintiffs peril.
3. At the time defendant discovers the peril or should have discovered the peril by the exercise of reasonable care, he could have avoided the accident.
Jackson v. Watson, supra; Gendusa v. Rabel, 212 So.2d 854 (La.App. 4th Cir. 1968); Lavigne v. Southern Farm Bureau, 125 So.2d 430 (La.App. 3rd Cir.1960).
The litigant relying on the doctrine of last clear chance has the burden of proving same by a preponderance of the evidence. Gendusa v. Rabel, supra. Thus, it was incumbent upon Picou to prove that the doctrine was applicable to his case. We are of the opinion he failed to prove that he was in a position of peril of which he was unaware, or from which he could not extricate himself.
Picou testified he saw Ferrara from a block away, saw his left turn signal on, and expected him to move into the left lane. He testified:
“Q. Now, when you saw the left blinker go on what did you think?
A. I was thinking the man was going to come over into the left lane.
Q. At that point, how far were you from the gold vehicle?
A. A block or so.”
*1223 After observing the left turn signal, and while debating in his mind what Ferrara was about to do, Picou rapidly approached the vehicle. He never applied his brakes and only reduced his speed by one or two miles per hour by engaging his clutch. He asserts that he did not take further precautions because he anticipated Ferrara was only going to change lanes, not turn left. Yet, he kept coming until he was practically even with the Ferrara vehicle knowing full well that Ferrara was signaling a man-uever that would put the auto in his (Pi-cou’s) path. We see no difference whether Picou anticipated a lane change or a left turn, he still knowingly placed himself in a position of peril. Furthermore, Picou failed to prove that Ferrara could have avoided that accident had he seen him. In fact, both parties testimony makes it clear that the collision occurred in a matter of seconds.
“It is too well established to require citation of authority that the doctrine of last clear chance is applied only in instances where the facts indicate the reasonable possibility of the avoidance of an accident, despite the contributory negligence of the other driver.” Clark v. Shannon, 120 So.2d 307, (La.App. 2nd Cir.1960), at 309.
For the above and foregoing reasons the judgment of the trial court is reversed. Appellee, Gary E. Picou is to pay all costs.
REVERSED.
REDMANN, C.J., and SCHOTT, J„ dissent with reasons.

. At the time this accident occurred the contributory negligence doctrine was the applicable law.