ON REMAND FROM THE SUPREME COURT
LOBRANO, Judge.
This matter is before us again on remand from the Supreme Court, 481 So.2d 1017. On the first remand we were instructed to *125 re-evaluate the damage award excluding evidence of defendant’s inability to pay. See, Rodriguez v. Traylor, 468 So.2d 1186 (La.1985). In our decree pursuant to that first remand, we followed the guidelines of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). This was error, as the Supreme Court has now instructed that where a jury has been erroneously instructed, we “... should fix the damages on the basis of an independent evaluation of the record, rather than simply increasing to the lowest reasonable amount.” The amount of damages fixed by the jury must be entirely disregarded.[1]
Even though our original opinion and that of the Supreme Court gives an accurate factual presentation of this case, we choose to reiterate, in more detail, the injuries sustained by Mrs. Rodriguez.
GENERAL DAMAGES
The thrust of the medical evidence concerning Mrs. Rodriguez’s injuries is derived from the testimony of Dr. Emile Ber-tucci, Jr. and Dr. Rayburn C. Llewellyn. The accident occurred on October 18, 1980. Mrs. Rodriguez was taken to East Jefferson Hospital where X-rays were made of her neck, back and left finger. The X-rays revealed no fractures so she was released and told to consult her family doctor if she had further problems. On October 20, 1980 plaintiff visited Dr. Bertucci who examined her and diagnosed contusion to the left side of her forehead, with cerebral concussion and post concussion headache, acute cervical sprain, sprain of the upper most portion of muscles between the neck and shoulder, strain of the musculature of the right anterior latteral chest wall, sprain of the left forefinger and acute lumbo-sacral strain. She was placed on muscle relaxants and physical therapy. Approximately a week later, she was admitted to St. Bernard General Hospital because of severe headaches, double vision, fainting spells and pain in both thighs and at the base of her neck. Dr. Correa, a neurosurgeon was called in for examination. The cervical and lumbar mylograms were negative, and plaintiff was discharged on November 10, 1980 with pain medication, tranquilizers and sedatives.
On November 26, 1980, because of persistent pain, Mrs. Rodriguez went to Dr. Llewellyn for a neurological exam. On November 30, 1980 she was hospitalized where a Cat scan revealed a tear of the L4-L5 disc. Surgery to remove the tear was performed on December 12, 1980. In addition, the L5-S1 disc was also found torn, and that damaged portion was also removed. Plaintiff was discharged December 19, 1980.
On February 19, 1981 she again sought Dr. Llewellyn’s assistance because of worsening neck problems. As a result of additional lumbar and cervical myelograms, plaintiff under went surgery a second time on March 31, 1981 to remove the torn disc at the C5-C6 spacing. Continued pain required plaintiff to return to Dr. Llewellyn in September, 1981. On October 6, 1981 she was again hospitalized. A kidney specialist found a urological disorder to the nerves that supplied her bladder caused by irritation in her cervical spine cord and in her nerves that supplied the bladder. A Cat scan showed the nerves were being destroyed by the settling process of fusions.
On October 15, 1981, plaintiff underwent a third operation to unpinch the nerves to her legs and bladder. A post operative check-up on February 3, 1982 revealed limited movement of her neck and lower back, as well as muscle spasm in the neck area. She was continued on medication.
Plaintiff returned to Dr. Llewellyn on May 5, 1982 with continuing pain in her lower back, right hip, head and neck. Additional hospitalization was recommended for further testing, however as of the date of trial plaintiff had not returned to Dr. Llewellyn.
*126 Based on our review of the evidence we conclude an award of $200,000.00 for general damages is appropriate.
SPECIAL DAMAGES
We also redetermine the award of special damages in view of our Supreme Court’s order on remand. In doing so, we point out that prior to the accident plaintiff had worked as a waitress and/or cashier for a period of 22 years. Subsequent to the accident she testified she was unable to return to work. Even though Dr. Llewellyn testified she had a 21% anatomical disability there is indication that future treatment may improve her condition. June Jackson, an occupational therapist, evaluated plaintiff on February 19, 1982. Based on plaintiff’s limitations because of pain in bending, twisting or lifting objects over ten pounds she concluded that plaintiff was not able to perform as a waitress.
Dr. Seymour S. Goodman, a Professor of Economics at Tulane University testified that Mrs. Rodriguez’s after tax loss of income to date of trial was $17,103.76. He computed a work-life expectancy of 17.4 years. Assuming total inability to work, he calculated the present value of future loss wages, discounted, and after taxes, to be $129,000.00.
Based on our independent review of the evidence with no weight given to the jury’s finding on the credibility of the experts, or their assessment on the sufficiency of the evidence on special damages,[2] we hold that plaintiff is entitled to loss of wages past and future in the amount of $146,103.76.
The record substantiates an award of $40,814.44 for medical bills from the date of accident until trial. Plaintiff’s exhibit 8 estimates future medical expenses at $4,800.00. Dr. Llewellyn estimates his professional services in connection with future treatment to cost $800.00.
Accordingly, there is judgment in favor of Mrs. Rodriguez in the amount of $200,000.00 in general damages, and $192,-518.20 in special damages. The award, however, is reduced by one-half in accordance with the holding in our original opinion. It is well settled that where there are two joint tortfeasors, and one is released, a plaintiff can only claim one-half of the total award against the remaining tortfeasor. Raley v. Carter, 412 So.2d 1045 (La.1982).
AMENDED, AND AS AMENDED, AFFIRMED.

. We conclude the Supreme Court’s order requires us to decide the quantum issue “de novo”. In so doing, we are to make our own evalua-lions of credibility and sufficiency of evidence as they apply to the damage portion of this case.

. We were in error on the first remand to give weight to the jury’s evaluation of credibility and sufficiency of evidence with respect to this item of special damages. But see, Picou v. Ferrara, 483 So.2d 915 (La.1986).