537 So.2d 1241 (1989)
Aaron MINTZ, et al.
v.
JEFFERSON INSURANCE COMPANY OF NEW YORK, et al.
No. 88-CA-0957.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1989.
Russ M. Herman, Michael J. Begoun, John B. Loweb, Herman, Herman, Katz & Cotlar, New Orleans, for appellants.
Ernest L. O'Bannon, John E. McAuliffe, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for appellees.
Before CIACCIO, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
Aaron Mintz, Ida Mintz, and Herbert Mintz, (collectively referred to as Mintz) seek reversal of the trial court's judgment in favor of Jefferson Insurance Company of New York and Sovereign Marine and General Insurance Company (defendant-appellees). By judgment dated April 15, 1988, the trial court dismissed plaintiffs' action at their costs assigning reasons.
This suit involves claims for fire losses in two separate fires in the same building at 1117 Calliope Street owned by plaintiffs and insured by the defendants.
The front of the building was a two-story masonry structure which connected to a rear one-story metal roof structure. Part of the building, the two-story structure and part of the rear one-story structure, was in the path of an approach to the new Mississippi River Bridge. The Louisiana Department *1242 of Transportation and Development purchased this part of the building in May, 1983 for $173,297.00. Mintz was permitted to use the building until its demolition.
An insurance policy was issued by the defendants covering the premises and was effective from August 8, 1984 through August 8, 1985.
The building burned twice. Once on January 14, 1985, causing damages of $33,000.00 and again on June 12, 1985, causing damages of $7,125.00.
Prior to the fires, part of the building was leased to an automobile repair garage business. The garage closed and vacated the premises in March, 1984.
On November 2, 1984, the defendants issued a notice of cancellation after they learned that the garage business had moved out and the building was unoccupied.
According to Jay Oppenheim, Mintz's insurance agent, when he received this notice, he contacted Aaron Mintz who indicated that he would use the building as a warehouse for his family owned furniture store. The cancellation was subsequently rescinded and the building was designated a warehouse under the policy. This was done November 5, 1984.
The insurers denied the January 14, 1985 claim for fire loss on the basis of a breach of the vacancy clause of the policy. The policy, however, was not cancelled at that time.
The insurers again denied the claim for fire loss which occurred on June 12, 1985. Subsequently, the policy was cancelled.
The trial judge referred the matter for trial to a court commissioner pursuant to La.R.S. 13:1171. The commissioner heard the case on September 21, 1987. In his report of November 13, 1987, the commissioner recommended that judgment in the amounts of damages sustained in each fire plus interest, penalties and attorney's fees be rendered in favor of Mintz. The commissioner reasoned that they had an insurable interest in the property and that the building was not "vacant" within the terms of the policy.
The defendants filed timely exceptions to the commissioner's report and recommendation.
On April 15, 1988, the trial judge, after reviewing the evidence, rejected the commissioner's recommendation and found that the evidence failed to establish that the premises were occupied as a warehouse. Judgment was entered dismissing the claims.
Mintz now appeals alleging that the trial court was clearly wrong in holding that the building was vacant.
The insurers reply maintaining that the premises were indeed vacant. Alternatively, they argue that the trial judge's decision should be upheld because Mintz did not possess an insurable interest in the property, and that they did not act arbitrarily or capriciously in denying the claims.
We do not reach the alternative issues presented as we find that the trial judge's factual determination that the building was vacant is not clearly wrong.
SCOPE OF REVIEW
At the outset we note that when a case is referred to a commissioner, that commissioner's authority is limited to gathering the facts and making a recommendation. La.R.S. 13:1171; Whitney National Bank of New Orleans v. Derbes, 436 So.2d 1185, 1192 (La.App. 4th Cir.1983), writ den. 441 So.2d 1220 (La.1983), cert. den., O'Quinn v. Whitney National Bank, 466 U.S. 938, 104 S.Ct. 1912, 80 L.Ed.2d 460 (1984). The trial judge is the ultimate trier of fact and is vested with the ultimate authority to render judgment. He makes a de novo determination. See, Pogo Producing v. United Gas Pipeline, 511 So.2d 809 (La.1987).
Moreover, the manifest error standard of appellate review applies even when the evidence before the trier of fact consists solely of written reports, records and depositions. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987). The rationale behind this principle of review is based not only on the trial court's better capacity to evaluate live witnesses *1243 but also "upon the proper allocation of trial and appellate functions between the respective courts." Id. at 826 quoting Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). However, in Picou v. Ferrara, 483 So.2d 915, 918 (La.1986) our Supreme Court, in considering a jury verdict predicated on erroneous instructions, stated that "... the reviewing court, under its constitutional authority to review facts, should make an independent determination of the facts from the record, if possible, without according any weight whatsoever to the factual findings of the erroneously instructed jury." (emphasis added) That holding does not reconcile the "allocation of functions" between trial and appellate courts. In those instances the appellate court, in effect, acts as a trial court. In this case, we apply the manifest error rule, although we have reservations as to whether that should be the correct rule of review where we examine the same "cold" record as the trial judge.
The evidence presented included the insurance policy which contained the following vacancy provisions:
"2. Vacancy and/or Unoccupancy Clause: It is warranted by the insured and the mortgagee that the premises described in this policy, or in any form or endorsement attached thereto, is occupied. Vacancy or unoccupancy of said premises for a period in excess of 45 days renders this policy null and void. This warranty supercedes any and all conditions of the Standard Fire Policy and all forms attached thereto."
* * * * * *
"Except as otherwise provided, permission is granted:"
* * * * * *
"B. For such unoccupancy as is usual or incidental to the described occupancy; but vacancy is limited to the 60 day period permitted by the policy conditions (`Vacant' or `Vacancy' means containing no contents pertaining to operations or activities customary to occupancy of the building. `Unoccupied' or `Unoccupancy' means containing contents pertaining to occupancy of the building while operations or other customary activities are suspended)."
Aaron Mintz testified that he stored furniture in the building on September 6, 1984 and on December 4, 1984. Delivery slips so dated were introduced into evidence. The September 6, 1984 document noted "Deliver Furniture for Storage" and the December 4, 1984 document stated "Deliver various pieces of mattressessofaetc for storage." Neither ticket is signed by anyone. Mintz further testified that after Oppenheim, his insurance agent, notified him of the impending cancellation of the insurance policy, he decided to store furniture in the building.
However, the cancellation notice was issued on November 2, 1984, and Oppenheim's call to Mintz was upon receipt of this notice, well after the alleged September 6, 1984 furniture delivery.
Roland J. Dupuy, Jr. an employee of Simplex Engine Parts and Darr Engine Service located across the street from 1117 Calliope Street testified that, after the garage business moved out of the building, it was occupied at times by vagrants. He never witnessed any deliveries from the furniture store.
Emile Lotz, fire department captain, who was called to the scene of both fires testified that there was evidence of vagrants living in the building. Fire Inspector John W. Nuckley, who investigated the cause of the fire, described the building as a "vacant open structure" with evidence of being occupied by vagrants.
Both incident reports of the fires noted that the building was vacant. The January 14, 1985 report stated that "the property vacant and open with evidence indicative of habitation by vagrants throughout. The property contained furniture and fixtures also indicative of vagrants". The June 12, 1985 incident report describes the building as "vacant and open".
Photographs taken after the fires do not suggest that the building was used as a furniture warehouse.
*1244 Thus, the only testimonial evidence which supports the position that the building was used as a warehouse for furniture was Mintz's own testimony, which appears to be somewhat inconsistent, and is clearly self serving.
In light of the other evidence presented, we cannot state that the trial court's ruling in favor of the defendant insurers is clearly wrong. We cannot say there is manifest error in his ruling.
Accordingly, the judgment of the trial court dismissing Mintz's suit is affirmed.
AFFIRMED.