SAVOIE, Judge.
This is a suit for damages sustained by Lawrence Sims, Betty Sims and their daughter, Hermánese Sims, as the result of a 3-car collision.
Defendants herein are Herman Conner; his employer, CRC Holston, Inc.; its insurer, The Home Indemnity Company; and Robert Fonseca and his employer, Terminix Pest Control, Inc.
By interrogatories, the jury found that defendants Conner, Holston and Home Indemnity were negligent and that their negligence was a proximate cause of this accident. Accordingly, it awarded monetary damages against these defendants. As to defendants Fonseca and Terminix, the jury concluded that although Fonseca and Ter-minix were negligent, their negligence was not a proximate cause of this accident. However, the jury also awarded damages against these defendants. See EXHIBIT 1 attached hereto.
In light of these findings, the trial court rendered judgment in favor of plaintiffs and against Conner, Holston and Home Indemnity. However, it dismissed plaintiffs’ demand against Fonseca and Terminix. Furthermore, the trial court dismissed the third party demand against Fonseca and Terminix. The court based its determination upon finding that: (1) the third party plaintiffs failed to prove by a preponderance of the evidence that their negligent acts and those of the third party defendants united to cause a single accident; (2) third party plaintiffs and defendants were not joint tortfeasors; and (3) the jury determined that Fonseca’s negligence was not a proximate cause of the accident.
From this judgment, plaintiffs appealed, alleging that the trial court erred in: (1) concluding that Fonseca’s and Terminix’s negligence was not a proximate cause of the accident, and (2) reducing the jury award by the percentage awarded against Fonseca and Terminix.
Defendants Conner, Holston and Home Indemnity also alleged several assignments of error in their brief. However, the record is devoid of any document constituting an answer to an appeal or an appeal by these defendants. Accordingly, these assignments of error are not before us for review. L.S.A.-C.C.P. art. 2133;[1] Alleman v. Sentry Insurance Company, 257 So.2d 799 (La.App. 3rd Cir.), writ denied, 261 La. 466, 259 So.2d 915 (1972).
We recognize that plaintiffs’ contentions center around the jury’s inconsistent answers to the interrogatories given to it at the close of the evidence.[2] In such instances, application of L.S.A.-C.C.P. art. 1812 was appropriate. It provides, in pertinent part, that when the answers to interrogatories are inconsistent with each other, the court shall not direct the entry of judgment but may return the jury for further consid *649 eration of its answers or may order a new trial.[3]
Here, the trial court neither returned the jury for further consideration nor ordered a new trial. It is now impossible for us to determine exactly what the jury intended. Since we have the entire record before us, and since a firsthand view of the witnesses is not essential to a fair resolution of the conflicting evidence, we will decide the case. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980).
The record reflects that plaintiffs’ vehicle was at a complete stop on the highway, waiting for another vehicle to negotiate a left turn. While in this position, plaintiffs’ vehicle was rear-ended by a truck driven by Conner. Immediately thereafter, Conner’s truck was rear-ended by a van driven by Fonseca.
Some question exists as to whether Conner’s vehicle was pushed into plaintiffs’ vehicle a second time as a result of the impact between Fonseca and Conner. It is this controversy that we must resolve.
LIABILITY
Hermánese Sims, driver of the first vehicle, testified that her vehicle was struck from behind twice. According to her, the first impact was harder and moved her vehicle approximately five feet. She approximated that the second impact moved her vehicle another three feet.
Betty Sims, a passenger in the first vehicle, agreed that there were two impacts and that the first impact was harder. She estimated that the vehicle moved forward a couple of feet after the first impact and two to three feet after the second impact. Mrs. Sims stated that she did not know how the second impact occurred.
Herman Conner, driver of the second vehicle, admitted that he rear-ended the Sims’ vehicle. Additionally, he stated that almost immediately thereafter, his truck was hit from behind by Fonseca’s van and pushed forward two to three feet. As a result thereof, he testified that his truck struck the Sims’ vehicle again, moving it eight to ten feet forward.
Robert Fonseca, driver of the third vehicle, stated he barely tapped Conner’s truck. He testified that this impact did not move Conner’s truck more than an inch and denied that it caused Conner to strike the Sims’ vehicle a second time.
Trooper Price, the investigating officer, testified that there were two impacts — Conner rear-ending the Sims’ vehicle and Fonseca rear-ending Conner’s truck. He stated that he questioned all of the persons involved in the accident and no one informed him that they had been hit twice. In addition, he stated that Mr. Conner did not indicate that he again hit the Sims’ vehicle as a result of his being rear-ended. Further, Trooper Price testified that the only physical evidence at the accident scene was some debris from the Sims’ vehicle. This debris was found approximately a foot or two under the front of Conner’s truck. Trooper Price explained that this indicated *650 that the Sims’ and Conner’s vehicles moved only two to three feet as a result of all collisions.
We note that Trooper Price is the only disinterested witness in this case. His testimony that no vehicle was struck twice coincides with the testimony of Fonseca. In addition, Fonseca’s and Trooper Price’s testimony as to the vehicles’ positions after all impacts is closely related to plaintiffs’ and Conner’s testimony with respect to the vehicles’ positions after the first impact. Furthermore, we find that there is a wide discrepancy in plaintiffs’ and Conner’s testimony as to the force of the alleged second impact to plaintiffs’ vehicle. Such discrepancy affects the credence of their testimony as to the occurrence of a second impact to plaintiffs’ vehicle. Finally, the minimal physical damage to the front of Fonseca’s van and the rear of Conner’s truck supports the conclusion that the impact between these two vehicles was so minor that the possibility of that impact pushing Conner’s truck several feet into plaintiffs’ vehicle a second time is remote.
Taken as a whole, we conclude that plaintiffs have failed to prove by a preponderance of the evidence that the collision between Fonseca and Conner resulted in a second collision between Conner and plaintiffs. Therefore, Fonseca’s negligence was not a proximate cause of plaintiffs’ injuries.
However, we do find that the record established by a preponderance of the evidence that Conner’s negligence was a proximate cause of the accident and injuries sustained by plaintiffs. Thus, the only remaining issue is damages.
DAMAGES — HERMANESE SIMS
Dr. Harris, a family practitioner, examined Hermánese Sims in the emergency room after the accident. He testified that she complained of neck pain which he diagnosed as a cervical strain with contusions to the right shoulder. Dr. Harris prescribed an “ice to heat” treatment and a muscle relaxant and anti-inflammatory drug.
Several days later, Hermánese was seen by Dr. Nauls, a family practitioner who was in practice with Dr. Harris. Dr. Nauls testified that Hermánese complained of neck and back pain, and headaches. While he could find nothing physically wrong with Hermánese, he did find a subjective limitation of range of neck motion. Dr. Nauls prescribed pain medication, a muscle relaxer and heat. Approximately one week later, Hermánese returned, still complaining of neck and back pain. Dr. Nauls still could find no objective reasons for the pain and, therefore, referred her to an orthopedist.
Dr. Rhymes, an orthopedic surgeon, first saw Hermánese in January, 1981, approximately eight months after the accident. She was referred to him by her attorney.
Dr. Rhymes recounted that, at that time, Hermánese complained of neck and low back pain. He found some tenderness in her neck and lower back, accompanied by muscle spasms. He also noted that Her-mánese stood with a moderate amount of swayback which aggravated the muscle spasms. Dr. Rhymes’ treatment consisted primarily of physical therapy and exercise. By mid-April, Dr. Rhymes found no significant evidence of muscle spasms although Hermánese continued to experience some pain and swayback. However, the above mentioned complaints continued for a year and a half during which time the examinations results remained unchanged. Dr. Rhymes last treated Hermánese in July, 1982, at which time a CT scan was performed. The results thereof were normal.
Hermanese’s major complaint was her back pain which she contends caused her to remain in bed on numerous occasions. Because of these instances, she contends she missed over half her classes which attributed to her poor performance in school. Further, she testified that she continually sought medical attention from the school infirmaries, as well as occasionally from off-campus doctors. Hermánese also testified that she took her medication and exer *651 cised regularly. At the time of trial, Her-mánese maintained that she still experienced neck pain, although it was less than that experienced right after the accident.
Undoubtedly, Hermánese suffered a substantial amount of discomfort as a result of this accident. However, the evidence fails to substantiate that she sustained a serious bodily injury. Contrarily, the medical testimony indicates that Her-mánese suffered primarily a cervical strain and lower back tenderness aggravated by her being swayback. Accordingly, we award Hermánese Sims $796.00 for medical expenses, as reflected in the record, and fix general damages at $3,000.00.[4]
DAMAGES — BETTY SIMS
Dr. Harris also examined Betty Sims in the emergency room following the accident. He diagnosed a subjective cervical strain and prescribed an “ice to heat” treatment and aspirin. Dr. Harris found no objective explanation for the pain. Further, he pointed out that normally a person similarly injured would not have come to the emergency room. However, since Mrs. Sims was already there with her daughter, she requested an examination.
Approximately nine days after the accident, Dr. Nauls examined Mrs. Sims for complaints of lower back pain. He determined her tailbone was tender and prescribed anti-inflammatory medication and heat. Dr. Nauls commented that he had neither any record of Mrs. Sims having been previously injured nor could he say with any degree of certainty that his diagnosis was related to the accident. Further, his records failed to reflect any complaints or diagnosis of neck pain.
Subsequently, Betty Sims was referred to Dr. Rhymes by her attorney. Upon her first visit in January, 1981, she complained of neck pain down to her left shoulder. Dr. Rhymes found tenderness in the left shoulder up to the base of her neck. He further determined that there was some muscle spasm in the shoulder and neck area. However, no other objective findings were discovered. Dr. Rhymes diagnosed a cervical sprain of the muscle and ligaments of the side of the neck and shoulder. Accordingly, he prescribed physical therapy and a medication for reducing swelling and inflammation around the sprains.
By the following month, Betty Sims experienced no tenderness. However, Dr. Rhymes recommended continued therapy and medication. Although she was to return in two weeks, she did not return for two months. At that time, she complained of more neck and lower back pain. Dr. Rhymes discovered some muscle spasm in the lower back area which had not previously existed but believed this was caused by female problems which Mrs. Sims was then experiencing. A week later, the tenderness was gone.
Subsequently, Mrs. Sims complained of injury to her entire left side. Dr. Rhymes performed a CT scan which results were normal. Over the next four months, Mrs. Sims continued these complaints for which Dr. Rhymes could find no logical explanation. In September, 1981, a myelogram and brain scan were performed on Mrs. Sims. Both test results proved normal. Dr. Rhymes saw Mrs. Sims on two more occasions — in March, 1982 and August, 1982 — at which times she further complained of neck pain.
At the time of trial, Mrs. Sims maintained that she was still experiencing neck pain, although it was less than that experienced immediately after the accident.
Undoubtedly, Mrs. Sims suffered some discomfort as a result of this accident. However, the evidence fails to indicate that she sustained a serious bodily injury therefrom. Contrarily, the medical testimony indicates • that Mrs. Sims’ neck pain was the only injury attributable to the accident. Her back pain was attributable to another cause completely unrelated to *652 the accident. Accordingly, we award Betty Sims $1,577.25 for medical expenses, as reflected in the record, and fix general damages at $1,000.00.[5]
DAMAGES — LAWRENCE SIMS
The testimony reveals that the rear of the Sims’ vehicle sustained a moderate amount of damage as a result of the accident. This included a dent in the back gate and the rear bumper. Accordingly, we award Mr. Sims $749.10 for property damage.[6]
For the foregoing reasons, judgment of the trial court is amended and as amended affirmed. It is hereby ordered, adjudged and decreed that there be judgment in favor of Hermánese Sims and against Conner, CRC Holston, Inc. and The Home In-demmty Company, m solido, m the amount of $3,796.00; judgment in favor of Betty Sims and against Conner, CRC Holston, Inc. and The Home Indemnity Company, in solido, in the amount of $2,577.25; and judgment in favor of Lawrence Sims and against Conner, CRC Holston, Inc., and The Home Indemnity Company, in solido, in the amount of $749.10, together with legal interest on the above stated amounts from the date of judicial demand. All costs, including expert witness fees, in the amounts set forth in the trial court’s judgment, are to be borne by Conner, CRC Holston, Inc., and The Home Indemnity Company, in solido.
AMENDED AND AS AMENDED AFFIRMED.
EXHIBIT ‘1”
[[Image here]]
*653 [[Image here]]
*654 [[Image here]]

. C.C.P. art. 2133 reads as follows:
"An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee’s action.”

. See Exhibit 1 attached hereto.

. C.C.P. art. 1812 reads as follows:
“The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict.
"When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers.
"When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdict, or may order a new trial.
“When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers or may order a new trial." (Emphasis added).

. See generally, Mart v. Schlumberger, Ltd., 422 So.2d 1205 (La.App. 1st Cir.1982), writ denied, 429 So.2d 128 (La.1983).

. See generally, Autin v. Allstate Insurance Company, 402 So.2d 219 (La.App. 1st Cir.1981).

. , , . , _ , . This figure was derived from the estimate report by Barbera Chevrolet, Inc., documented as P-1 and Plaintiff’s Proffer # 3. We extracted therefrom the cost of repair for only such damage that was proven to have resulted from the accident