577 So.2d 263 (1991)
Lucille KNIGHT
v.
FIRST GUARANTY BANK.
No. 90 CA 1585.
Court of Appeal of Louisiana, First Circuit.
March 5, 1991.
Rehearing Denied April 18, 1991.
Writs Denied June 14, 1991.
*264 Hobart Pardue, Springfield, for plaintiff-appellee.
Alton Lewis, Hammond, for defendant-appellant.
Before SAVOIE, CRAIN and FOIL, JJ.
*265 SAVOIE, Judge.
Plaintiff, Lucille Knight, filed suit against defendant, First Guaranty Bank (Bank), seeking to recover the proceeds she had on deposit at the Bank in a checking account and a savings account as well as in certificates of deposit (CDs). She alleged that the Bank was liable to her for the amounts of the instruments and accounts as well as for general damages because it had released the funds to third persons based on forged signatures and indorsements.
Following a jury trial, the jury found that Knight had received none of her funds on deposit at the Bank and awarded her $92,354.99. The jury found that the Bank was negligent and awarded Knight $30,000.00 in general damages. Judgment was rendered in accordance with this verdict. From this judgment, the Bank appeals.

TRIAL TESTIMONY AND EVIDENCE
We summarize the testimony and evidence concerning the forgeries and the Bank's handling of the matter as follows.
Knight was kidnapped, drugged, and held captive by Terry and Ginger Barrett of Ringold, Georgia. The Barretts took Knight from her home in Hammond to Ringold, where they lived. During Knight's captivity, the Barretts forged her signature on checks, CDs, money orders, and a letter of instruction regarding her savings account. These forgeries depleted Knight's checking and savings account at the Bank as well as her CDs. The Bank's representatives were under the impression that Knight had moved from Hammond (the location of the Bank) to Georgia.
The following checks were allegedly written by Knight as drawer on her checking account at the Bank: check number 1377 dated February 5, 1986, payable to "Barretts'" for $7,500.00 bearing the notation "Loan"; check number 1378 dated February 23, 1986, payable to T.L. Barrett for $1,000.00 with the designation "½ acre property"; check number 1379 dated February 28, 1986, payable to Cash for $5,000.00 with the notation "New Land cleared"; check number 1381 dated March 8, 1986 payable to Cash for $2,000.00 with the notation "Septic Tanks"; and check number 1382 dated March 13, 1986, payable to Cash for $1,000.00 with the notation "close out acc." All of these checks were deposited in the Barretts' account at Pioneer Bank in Chattanooga, Tennessee.
On March 14, 1986, a Northwest Georgia Bank employee sent the Bank a CD belonging to Knight in the amount of $30,863.11 for collection. The CD was apparently endorsed by Knight, stamped with "prior endorsement guaranteed", and indorsed by the Georgia bank. The Bank held the CD until it matured and then forwarded to the Georgia bank a money order dated April 9, 1986, payable to the Georgia bank for Knight for $33,510.59. As to the money order, the Bank was the drawer and Citicorp Inc. in New York City was the drawee. The money order was negotiated by the Georgia bank and on April 14, 1986, it issued to Knight a cashier's check payable to her for $33,505.59.
Knight sent the Bank a letter of instruction stating that she wanted to withdraw all money in excess of $200.00 from her savings account and that on April 1, she wanted the remaining balance sent to her. She also asked that the Bank close her checking account and send her the cash from her CDs when they matured. The letter was purportedly signed by Knight and three witnesses. On March 25, 1986, the Bank sent Mrs. Knight a money order payable to her for $14,811.71 which was for the funds in her savings account. The Bank issued another money order payable to Knight on May 15, 1986, for $12,468.16 and one on May 28, 1986, for $18,172.40. These last two money orders represented funds from two CDsone for $15,180.17 and one for $15,000.00. Knight allegedly had sent a letter to the Bank asking for it to send the two CDs to her in a cashier's check payable to her. The letter was dated May 1, 1986, allegedly signed by Knight, notarized and witnessed. As with the money order for $33,510.59, these other money orders were drawn by the Bank on Citicorp, Inc. in New York City.
*266 Knight escaped the Barretts in May, 1986. She went to the Bank in May or June 1986 and informed Vermel Sylvest, a Bank employee, of what had happened. Sylvest referred the plaintiff to Huey Adams, the Bank's security officer. According to Adams and Sylvest, Knight had no documents and did not ask them for any. Adams told Knight she would have to seek redress from the Georgia bank which cashed the forged instruments.
Knight returned to the Bank in October or November of 1986 and spoke to Dave Bodi, a senior vice president at the Bank. Knight told Bodi what happened, and Bodi referred her to the attorney who is presently handling her case. On January 30, 1987, Knight executed an Affidavit of Forgery and presented it to Bodi. Bodi made demand on the Georgia and Tennessee banks for the return of Knight's money. These banks rejected the demand.
On February 19, 1987, the FBI advised the Bank of a criminal investigation it had instituted in Ringold, Georgia and Chattanooga, Tennessee, and seized as evidence all of the original documentation relative to these transactions that the Bank possessed.
In August, 1988, the Barretts were tried in federal court and convicted of kidnapping and forgery. On November 28, 1988, the FBI sent to the Bank all documentation obtained from it.
From the judgment in favor of Knight and against the Bank, the Bank appeals, urging the following assignments of error.
ASSIGNMENTS OF ERROR
1. The trial court committed error in dismissing the defendant's Peremptory Exception of No Cause of Action to plaintiff's claim for general damages arising out of checks and Certificates of Deposit.
2. The trial court erred in dismissing defendant's Exception of No Right of Action to plaintiff's claim for general damages arising out of the criminal proceedings in Georgia.
3. The jury committed manifest error as a matter of law in awarding general damages to Lucille Knight.
4. The trial court committed manifest error in finding First Guaranty Bank negligent.
5. The trial court committed manifest error in excluding the Power of Attorney executed by Lucille Knight in favor of Ginger Barrett, and the Notary's Commission offered as defendant proffer 1 and defendant proffer 2 from evidence.
6. The trial court committed manifest error in allowing the testimony of Byard Edwards, Jr. as rebuttal when the defendants had entered no evidence which Mr. Edwards' testimony could rebut.
7. The trial court committed manifest error in allowing plaintiff's counsel to argue general damages for the first time in the rebuttal portion of his closing argument when neither plaintiff's counsel nor defendant's counsel had mentioned general damages previously in argument.
8. The trial court committed manifest error in excluding all sixteen of the Special Requests for Jury Instruction which had been submitted by the defendant. Each of these will be specified in the Argument following and the reasons will be specified for each why it was proper jury instruction. Sixteen Instructions were submitted. Sixteen were denied.
9. The trial court committed manifest error in denying the Request for Interrogatories submitted by the defendant.
10. The trial court committed manifest error in submitting to the jury the Jury Interrogatory Form submitted at pages 141 and 142 of the record.
11. The trial court committed manifest error in instructing the jury on the elements that the plaintiff must prove in order to recover.
12. The trial court committed manifest error by, through its Instructions and Jury Interrogatories, limiting the jury to consideration of the Certificates of Deposit without considering the bank money orders which were properly issued in the name of Lucille Knight and transmitted to Lucille Knight at the address where she resided.

*267 ASSIGNMENT OF ERROR NO. 5: POWER OF ATTORNEY
The Bank contends that the trial court erred in excluding from evidence a copy of a notarized power of attorney purportedly executed by Knight. The Bank proffered the power of attorney in which Knight authorized Terry Barrett to act in her behalf as to certain pieces of property, including all Knight's CDs.
When the Bank attempted to offer the power of attorney into evidence, Knight objected. The trial court sustained the objection on four bases: 1) the document was a copy; 2) the document was not certified; 3) a witness was available to prove the document's authenticity; and 4) the document was not relevant.
Neither the Northwest Georgia Bank nor the defendant Bank relied on this power of attorney to negotiate the CDs. Boyd Steele, the Georgia Bank officer, testified in his deposition that the Barretts came into the bank twice to cash their relative's CDs and that they told him they had a power of attorney the first time they came in. He informed them that the bank "did not honor those things in a situation like this." Terry Barrett returned alone and said he had a notarized power of attorney that he would like to use to cash in the CD. Again, Steele told him they "did not handle situations like that", whereupon Barrett left. Steele was not involved when the Barretts successfully initiated the process to collect on the CD. The CD was negotiated based on the forged signature of Knight, not on the power of attorney.
We find that even if the trial court erred in excluding the power of attorney, this exclusion was not so prejudicial that the admission of the evidence would have changed the outcome of the trial. See Nicolosi v. Livingston Parish School Board, 441 So.2d 1261, 1627 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1243 (La.1984). Even with the addition of the proffered testimony, the jury would have reached the same result without committing manifest error. The evidence that the instruments were forged was very strong and the Bank relied on the forgery in negotiating the CD, not on the power of attorney. Accordingly, any error which may have been committed by the trial court in this respect does not warrant reversal. See Young's Heirs v. Veillon, 192 So. 545 (La.App. 1st Cir.1939); Jackson v. Jackson, 411 So.2d 684 (La.App. 4th Cir.1982).

ASSIGNMENT OF ERROR NO. 12: FAILURE TO CONSIDER MONEY ORDERS
The Bank contends that the trial court erred in its jury charges and interrogatories concerning the CDs. The Bank argues that it is not liable for the forged indorsements on the CDs because it satisfied its obligations by issuing money orders payable to Knight with a New York bank as the drawee; the Bank contends that if Knight's indorsement on the money orders was forged, the New York bank as drawee is liable. In support of its contention, the Bank cites Lilliedahl & Mitchel, Inc. v. Avoyelles Trust & Savings Bank, 352 So.2d 781 (La.App. 3d Cir.1977).
In Lilliedahl, the president of a corporation requested the bank to cancel four CDs payable to the corporation, and he applied the proceeds to the reduction of his personal indebtedness to the bank. The corporation filed suit to recover from the bank the proceeds of the CDs. The trial court found the bank liable as to three of the four CDs because the proceeds for these CDs were never paid to the corporation. The trial court found no liability as to the remaining CD because the proceeds for this CD had been deposited into the corporate account after which the president wrote a corporate check on the account which was applied to his personal debt. The Third Circuit affirmed the trial court's judgment.
In Lilliedahl, the indorsement on the CDs by the corporate president was authorized; however, the funds for three of the CDs were never credited to the corporation nor did the corporation have actual or constructive possession of them. In the case sub judice, the indorsement on the CDs and the instruction to negotiate the CDs was not authorizedthe indorsement was forged as was the signature on the letter *268 of instruction. Thus, regardless of the fact that cash was actually paid to the forgers based on their forged indorsements on money orders, the conversion of CDs to money orders was unauthorized because it was based on forged indorsements.
A CD is "an acknowledgment by a bank of receipt of money with an engagement to repay it." LSA-R.S. 10:3-104(2)(c). According to the CDs, the Bank was to pay Knight the amounts deposited with interest "upon the presentation and surrender of this certificate properly endorsed...." LSA-R.S. 10:3-419(1) states "when a person pays an instrument on a forged indorsement, he is liable to the true owner."
The Bank complains of the trial judge's failure to charge the jury that "[a] check or money order does not amount to payment of the obligation for which it is given until it is paid by the drawee bank." The judge charged the jury as follows as to the CDs:
[T]he plaintiff must show number one, that she had moneys in First Guaranty Bank and the amount, and number two, that the bank paid the five checks over forged signatures. Number three, that the bank paid the three certificates of deposit over forged endorsements. Number four, that the bank transmitted money from the plaintiff's savings account on the authority of a forged letter and number five, that the plaintiff did not receive the proceeds of these transactions from the bank.
The Bank also complains of the trial judge's failure to submit its requested jury interrogatories to the jury. The interrogatories actually submitted to the jury asked whether Knight received the money paid out by the Bank and whether the Bank was liable due to forgery for payment of each check, each CD, and the balance of the savings account. An example of the form of the interrogatories is: "Is First Guaranty Bank liable, due to forgery, to Lucille Knight for payment of Certificate of Deposit No. 62109 in the amount of $30,863.11?" The interrogatories the Bank requested were as follows. As to each check, the jury was to be asked whether the Bank was liable to Knight for payment of the specific check in its particular amount. As to the CDs, the jury was to be asked, "Is First Guaranty Bank liable to Lucille Knight for payment of First Guaranty Bank money order no. XXXXXXXXX in the amount of $33,510.59?"
We find that the judge's charges and interrogatories concerning the CDs were proper. The evidence showed that the CDs were negotiated based on forged indorsements. While the forgers may have obtained cash based on forgeries on money orders, the CDs were initially converted to money orders based on forged indorsements. Converting the CDs to money orders constituted payment of the CDs. LSA-R.S. 10:3-419 provides that where a person pays an instrument on a forged indorsement, he is liable to the true owner. The court was correct in instructing the jury that if it found the CDs were paid on a forged indorsement, the Bank was liable. This Assignment of Error has no merit.

ASSIGNMENT OF ERROR NO. 1: GENERAL DAMAGES
The Bank filed an exception of no cause of action contesting Knight's claim for general damages based on the Bank's failure to timely refund to her the funds lost through forgery and on the Bank's purported assistance to the kidnappers in their criminal trial. The exception was ultimately denied. The Bank contends the trial court erred in denying this exception.
We have thoroughly reviewed the Uniform Commercial Code (U.C.C.) and Louisiana jurisprudence to determine whether Knight is entitled to general damages for the Bank's actions. Knight's recovery against the Bank is based in part on its payment of checks with forged drawer signatures. The Bank's liability as to the checking account is contractual, based on its breach of LSA-R.S. 10:4-401. Under LSA-R.S. 10:4-401, a bank may charge against its customer's account any item which is "properly payable." According to LSA-R.S. 10:3-404, an unauthorized signature, which includes a forgery, is "wholly inoperative as that of the person whose name is signed." Therefore, Knight's *269 forged signature as drawer on the checks gave the Bank no authority to pay on the checks. See Curtis v. Hibernia National Bank, 522 So.2d 705 (La.App. 5th Cir.1988). Damages for improper payment of the checks are set forth in LSA-R.S. 10:4-103, which reads as follows:
(5) The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.
Thus, damages for the forgeries as to the checks were limited to the amounts of the items in the absence of bad faith. See Stepter v. Hibernia National Bank, 524 So.2d 210 (La.App. 4th Cir.1988).
Knight's recovery against the Bank is also based on its payment of the funds in her savings account based on a letter of instruction bearing her forged signature. The Bank's liability as to the savings account in this case is not governed by the U.C.C. See LSA-R.S. 10:4-104(1)(g); 10:4-103(5). A conversion action is available to Knight. U.S. v. Hibernia National Bank, 882 F.2d 961, 964 (5th Cir.1989). Because the U.C.C. is not applicable, Knight's recovery as to the savings account is not limited to the amount in the savings account, and an award of general damages as to these funds is proper. See Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 762 (La.1985).
Knight also seeks to recover damages based on forged indorsements on CDs. This recovery falls under LSA-R.S. 10:3-419, as earlier stated. According to LSA-R.S. 10:3-419(2) "(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument." However, a recent case before this court involved an action by a payee against a bank where the payee alleged that the bank was a co-tortfeasor who assisted in the wrongful conversion of a check. Patterson v. Livingston Bank, 509 So.2d 6 (La.App. 1st Cir.1987). According to the payee's petition, the defendant bank accepted a check payable to the payee, but indorsed by another person. The action was covered by LSA-R.S. 10:3-419 because it involved payment on a forged indorsement. We held that the payee's petition stated a cause of action in tort against the bank for conversion and that the payee's damageseffect on payee's credit rating and effect on payee's Christmas shoppingwere actionable under LSA-R.S. 10:3-419 and LSA-C.C. art. 2315. Although the Patterson case appears to extend the measure of damages beyond the scope of LSA-R.S. 10:3-419 as we read it, we are bound to follow Patterson, and therefore Knight was entitled to recover general damages for the conversion of the CDs. The general damages would include the Bank's failure to timely reimburse Knight the funds lost due to the forged CDs. Thus, the trial judge did not err in denying the Bank's exception and this Assignment of Error has no merit.

ASSIGNMENT OF ERROR NOS. 3, 8, 9, 10 AND 11: JURY CHARGES AND INSTRUCTIONS ON GENERAL DAMAGES
The Bank contends that the trial judge erred in charging the jury as to general damages. The Bank contends that the trial judge erred in failing to give four charges it submitted which we summarize as follows: the bank is not liable for general damages where it charges a forged check to a depositor's account; the bank's liability for payment on a forged indorsement is limited to the face amount of the instrument; and LSA-R.S. 10:3-419(3), which reads in the pertinent part as follows:
a representative, including a depository... bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable to the true owner beyond the amount of any proceeds remaining in his hands. *270 The fourth requested jury charge was LSA-R.S. 10:4-103(5), which we set forth earlier in this opinion.
The instructions given to the jury initially set forth the elements Knight needed to prove to recover for the forged instruments (these instructions are set forth under Assignment of Error No. 12.). Then, the judge told the jury that Knight's second theory of recovery "is that she was damaged by the bank's failure to honor her request for payment of the moneys she had in the bank." The judge went on to explain that this was a tort action and that Knight had to prove that the Bank was at fault, that the injuries she suffered were caused by the Bank's conduct, and that she suffered "actual damage" to her "person." The judge then explained that damages represented reparation for injuries and, that the damages must be proven by a preponderance of the evidence, among other things.
The jury interrogatories concerning the Bank's negligence were as follows:
12. Was First Guaranty Bank negligent in not paying Lucille Knight the money she claimed to have had in the bank on the day she was abducted?
13. Did the negligence of First Guaranty Bank cause damage to Lucille Knight in the form of mental anguish and distress?
14. What amount of damages is Ms. Knight entitled to recover for mental anguish and distress?
We find that the instructions were improper because, as we have discussed earlier, the Bank's liability on the checks is limited to the amount of the checks, in the absence of bad faith. The trial judge did not instruct the jury that its award of damages for negligence was limited to the CDs and savings account.
We must now determine whether the improper charges contributed to the verdict. Picou v. Ferrara, 483 So.2d 915, 918 (La. 1986). If the erroneous charges contributed to the verdict, no weight should be given to that portion of the verdict. Picou, 483 So.2d at 918; McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986). In such instance, the appellate court must make an independent review of the record in order to determine which party should prevail on that issue by a preponderance of the evidence. Picou, 483 So.2d 918; McLean, 495 So.2d at 1304.
We do not believe that the improper charges contributed to the verdict. Based on the Patterson case, damages could be properly awarded based on the Bank's failure to timely reimburse Knight the proceeds from the CDs and savings account. Of the $92,354.99 in funds on deposit with the Bank, $61,043.28 represented CDs, and $14,811.71 represented the savings account. Because the bulk of the proceeds Knight was owed from the Bank were CDs and savings account (82%), the general damages award was mainly based on these items for which general damages could properly be awarded. Thus, we find that the trial judge's failure to limit the general damages in his jury instructions and interrogatories did not contribute to the verdict. These Assignments of Error have no merit.

ASSIGNMENT OF ERROR NO. 7: GENERAL DAMAGES ARGUED IN REBUTTAL ARGUMENT
The Bank contends that the trial judge erred in allowing Knight's attorney to argue general damages in his rebuttal argument where neither he nor the Bank's attorney had raised this in their closing arguments.
At trial, the Bank objected, and the trial judge denied the Bank's objection. The trial judge gave the Bank's attorney an opportunity to respond to that portion of the rebuttal argument dealing with mental anguish and general damages. The Bank's attorney declined to do so.
On appeal, the Bank contends that the trial judge erred because rebuttal is intended to counter arguments raised or matters discussed by defendant, citing Longino v. Shreveport Traction Co., 120 La. 803, 45 So. 732 (1908). While rebuttal generally is not intended for new issues, this principle is still governed by the trial court's authority to regulate opening and closing arguments, which we set forth in Starks v. *271 Kelly, 435 So.2d 552, 554 (La.App. 1st Cir. 1983):
Counsel has great latitude in presenting opening or closing arguments to a jury. The trial judge has much discretion in regulating and controlling such arguments within proper bounds. The rulings of the trial court in controlling and regulating the arguments of counsel will not be reversed unless they constitute an abuse of his much discretion.
(Citations omitted).
The issue of Knight's mental pain and suffering had been raised in opening statements and had been dealt with during the trial in evidence. Because the trial judge permitted the Bank's attorney an opportunity to respond to the rebuttal, we cannot say the trial judge abused his discretion in allowing Knight's attorney to discuss general damages. This Assignment of Error has no merit.

ASSIGNMENT OF ERROR NO. 4: THE BANK'S NEGLIGENCE
The Bank contends that the jury erred in finding it negligent. The jury found that the Bank was negligent in failing to timely reimburse Knight.
In brief, the Bank first argues that the evidence does not show that the Bank was negligent in negotiating Knight's CDs and closing out her savings account. However, the jury's finding of negligence did not apply to these matters; rather the negligence finding only pertained to the reimbursement of the money lost due to forgery.
As to the finding, the Bank in brief states that Knight's banking expert testified that he would not have refunded her money based on her allegations. In support of its contention, the Bank also cites Bodi's testimony that without the originals of the CDs or checks, he could not refund Knight's money.
According to the evidence, all documents were returned to the Bank by the FBI on November 28, 1988. Yet at the time of trial of this matter (January 24-30, 1990), the Bank still had not paid Knight although the Bank was aware that the Barretts had been convicted in federal court of kidnaping and forgery. We find the jury was not manifestly erroneous in finding the Bank to be negligent in reimbursing Knight, after a thorough review of the record. Rosell v. ESCO, 549 So.2d 840 (La.1989). This Assignment of Error has no merit.

ASSIGNMENT OF ERROR NO. 2
The Bank filed an exception of no right of action contending that because Knight was not a party to the criminal proceedings, she was not entitled to damages for the Bank's allegedly improper activities in the criminal trial against the Barretts. The trial court denied the exception, and the Bank urges this as error.
We pretermit discussion of the merits of the Bank's exception. This issue was not submitted to the jury. The judge did not instruct the jury as to any liability based on the bank's activities in the criminal trial, and none of the jury's interrogatories concerned this issue. For these reasons, this Assignment of Error has no merit.

ASSIGNMENT OF ERROR NO. 6: REBUTTAL TESTIMONY
The Bank contends that the trial court erred in allowing Byard Edwards to testify as a rebuttal witness for Knight because Edwards' testimony was not a response to evidence adduced by the Bank. The Bank contends that Knight did not present any evidence in her case-in-chief concerning the Bank's involvement in the Barretts' criminal trial; likewise, the Bank did not present any evidence concerning this matter in its case-in-chief or in its questions to Knight's witnesses.
The Bank's attorney objected when Edwards testified, but the judge overruled the Bank's objection. Edwards, an attorney, testified that he was contacted by the Bank's attorney and asked to go to Georgia to testify in the Barretts' criminal case. Edwards said that he was to testify about his favorable impression of Ginger Barrett after representing her in another case. According to Edwards, the Bank's attorney told him that he was representing the Bank *272 and that if Ginger Barrett were found not guilty, it would help the Bank. Edwards said that the Bank's attorney told him he would take care of the plane ticket but that Edwards did not know who was paying for the ticket.
After Edwards testified, the trial judge allowed the Bank's attorney to respond to his testimony. The Bank's attorney testified, without cross-examination, that Ginger Barrett's attorney requested that he contact Edwards. The Bank's attorney purchased Edwards' plane ticket, but he invoiced Barrett's attorney for the flight.
The Bank correctly cites Article 611 E of the Louisiana Code of Evidence which states, "[t]he plaintiff in a civil case and the state in a criminal prosecution shall have the right to rebut evidence adduced by their opponents." A corollary to this rule is that the admission of rebuttal evidence is largely within the discretion of the trial court. Combs v. Hartford Insurance Co., 544 So.2d 583, 588 (La.App. 1st Cir.), writ denied, 550 So.2d 630 (La.1989). We must determine whether the trial judge abused his discretion. Combs, 544 So.2d at 588.
In this case, we do not believe that the trial judge abused his discretion. While the testimony Knight presented was not a response to evidence "adduced by their opponents", the trial judge gave the Bank's attorney an opportunity to rebut the evidence. Additionally, as we noted under Assignment of Error No. 2, even if the judge did abuse his discretion in allowing Edwards to testify, the issue of the Bank's liability for its alleged involvement in the criminal trial did not go to the jury. This Assignment of Error has no merit.

ASSIGNMENT OF ERROR NO. 8 & 11: JURY INSTRUCTIONS
The Bank contends that the trial judge erred in failing to give certain charges it submitted to the jury. The first set of charges dealt with Knight's duty to examine her bank statements for forgeries on her checks; in part, the charges stated that if Knight failed to report the forgeries to the Bank within a certain time, she could not recover against the Bank on the checks.
A charge to the jury, even if it correctly states the law, must be based on evidence adduced in the case. Dixie Carriers, Inc. v. Otto M. Lipscomb, Inc., 387 So.2d 1357 (La.App. 1st Cir.1980). A trial judge is not required to give a charge unless the facts support the giving of the charge. Esta v. Dover Corp., 385 So.2d 439 (La.App. 1st Cir.), writ refused, 392 So.2d 690 (La.1980).
In the case sub judice, the trial judge apparently reasoned that because the evidence showed that Knight had been kidnapped and was in captivity, she would have been unable to examine her bank statements or report any forgeries; thus, her duty to do these things was abrogated and the charge did not apply to the facts of the case.
The second set of charges the Bank requested dealt with the Bank's duty to pay instruments presented to it and the Bank's liability for wrongful dishonor. The third set of charges dealt with the presumption that a signature is authorized. We find that the trial judge did not err in failing to give these charges because they were not applicable to the evidence. The evidence was overwhelming that Knight's signature was forged. The Bank's duty to pay an instrument does not include an instrument which bears a forgery and the Bank is only liable for "wrongful refusal" to pay an item. LSA-R.S. 10:4-401.
Finally, the Bank contends that the trial judge erred in refusing to give its charge that a signature could properly be made by an agent or other representative. The Bank contends that this charge applied to the power of attorney. Because the trial judge refused to admit the power of attorney, this charge was properly refused. These Assignments of Error have no merit.
For these reasons, the trial court's judgment is affirmed. Costs of this appeal to be paid by the Bank.
AFFIRMED.