669 So.2d 577 (1996)
Gaylord and Joan JOHNSON
v.
TERREBONNE PARISH SHERIFF'S OFFICE, Sheriff Jerry L. Larpentier and Their Undisclosed Liability Insurance Company.
No. 95 CA 1180.
Court of Appeal of Louisiana, First Circuit.
February 23, 1996.
Writ Denied April 26, 1996.
*579 Arthur Cobb, Baton Rouge, for Plaintiff/Appellant, Joan Johnson.
William F. Dodd, Houma, for Defendant/Appellee, Terrebonne Parish Sheriff's Office.
Before CARTER and PITCHER, JJ., and CRAIN[1], J. Pro Tem.
CARTER, Judge.
This is an appeal from a trial court judgment in an action for damages for wrongful death and civil rights violations.

FACTS
On the evening of September 2, 1989, fifteen-year-old Billy Johnson and his friend, Ryan Roberts, spent the evening at the home of another friend, Clifford Foret. The following evening, on September 3, 1989, Billy Johnson appeared at the Foret home with a gun. Billy Johnson threatened Foret and two other boys, namely Ron Chauvin and Ryan Roberts, with the gun. Chauvin talked Billy Johnson into giving him the bullets, and Foret then hid the gun. Foret later returned the gun, and Chauvin returned the bullets to Billy Johnson. Subsequently, the boys drank some liquor and smoked marijuana.
Later that evening, Billy Johnson became angry with Ryan and threatened to shoot someone. Around midnight, Foret went to the home of a neighbor and telephoned the Terrebonne Parish Sheriff's Office for assistance. When Foret returned, he was accompanied by deputies. As Foret attempted to enter his home, Billy Johnson fired the gun at Foret twice, striking one of the police officers. Billy Johnson then barricaded himself in one of the bedrooms of the Foret home and refused to come out.
Thereafter, numerous officers responded to the scene, including the sheriff. One of the officers began negotiating with Billy Johnson to end the stand-off and leave the residence. At around 12:45 a.m., the officers contacted Billy Johnson's parents, Gaylord and Joan Johnson. Mr. Johnson was working off-shore at the time, but Mrs. Johnson secured a ride to the Foret home and arrived at the scene at approximately 1:00 a.m.
Shortly before 2:00 a.m., the sheriff's office made a decision to end the stand-off. After the perimeter of the house was secured by officers, tear gas was thrown into the home. Thereafter, the officers heard a gunshot, then heard a second shot and the sound of someone falling to the ground. After the tear gas dissipated from the home, officers entered the home and discovered the body of Billy Johnson in the bedroom closet. Billy Johnson died as a result of a self-inflicted gunshot wound to the head.
On September 4, 1990, plaintiffs, Gaylord and Joan Johnson (the parents of Billy Johnson) filed the instant suit for damages for wrongful death and civil rights violations, requesting a jury trial. Named as defendants in the petition were Sheriff Jerry J. Larpenter, the Terrebonne Parish Sheriff's Office, (collectively referred to as the sheriff's office), and the liability insurer of the sheriff's office. In their original petition, the Johnsons named the Undisclosed Liability Insurance Company as the liability insurer of the sheriff's office. By supplemental and amending petition, filed on May 14, 1991, the Johnsons added as defendants Hunt Insurance Group, Inc. and/or the Louisiana Sheriff's Risk Management Agency and the Louisiana Sheriff's Association, the possible liability insurer of the sheriff's office. Defendants answered the petition, generally denying the allegations of the petition.
On September 12, 1991, the sheriff's office filed a motion to strike the Johnsons' request for a jury trial as concerned the sheriff's office. By judgment, dated November 25, 1991, the trial court granted the motion to *580 strike the jury trial as to the sheriff's office. Thereafter, the matter proceeded to trial, with the trial judge deciding the issues as to the sheriff's office and the jury deciding the issues as to the liability insurer.
The jury deliberated for several hours and returned a verdict, finding that the seizure of Billy Johnson by the sheriff's office was unreasonable, that the sheriff's office was not negligent in its supervision of the incident surrounding Billy Johnson's death, and that the unreasonable seizure and/or negligence was the cause of Billy Johnson's death. However, the jury left unanswered the remainder of the jury interrogatories, which addressed the amount of damages sustained. The initial verdict form completed by the jury is not contained in the record, but the parties agree that the initial jury interrogatories were completed in the manner set forth in this opinion.
After a conference among the attorneys and the judge, the jury was instructed that some of the answers to the interrogatories were inconsistent and to return to the jury room to try to resolve those inconsistencies. The record does not contain a transcript of the conference among the attorneys and the trial judge, nor does it contain a transcript of the trial judge's instructions to the jury. However, the parties agree as to what took place in the conference outside the presence of the jury, and the minutes reflect the instructions given to the jury.
Thereafter, the jury sent a note to the judge, inquiring as to how the answers to the jury interrogatories were inconsistent. The judge again conferred with counsel for all parties and then advised the jury that he could not comment on the evidence. The record does not contain a transcript of the trial judge's conference with the attorneys, however, the parties do not dispute what took place during the conference.
Thereafter, the jury completed its deliberations and returned its verdict. The jury determined that, although the sheriff's office was not negligent in its supervision of the incident surrounding the death of Billy Johnson, the sheriff's office was unreasonable in its seizure of Billy Johnson. However, the jury found that the unreasonable seizure was not the legal cause of Billy Johnson's death.[2] *581 The trial judge determined that the sheriff's office did not violate Billy's Johnson's civil rights and was not negligent. Accordingly, the trial court rendered judgment in favor of the sheriff's office and its liability insurer and against the Johnsons, dismissing their suit at their costs.
On July 21, 1992, the Johnsons filed a motion for new trial, contending that the trial judge had commented on the evidence. The trial court denied the Johnsons' motion on February 10, 1994. Thereafter, the Johnsons appealed, and Joan Johnson (the mother of Billy Johnson) filed a motion to proceed in forma pauperis, which was denied. On application for supervisory writs to this court, Joan Johnson sought a review of the denial of her motion to proceed in forma pauperis. On May 23, 1994, this court, under docket number 94 CW 0547, granted Joan Johnson's writ application, vacated the trial court judgment denying pauper status, and remanded the matter to the trial court for an evidentiary hearing on the relator's qualification to proceed as an indigent on appeal. After the evidentiary hearing was held, the trial court rendered judgment, allowing Joan Johnson to proceed in forma pauperis. The trial court's judgment, which was signed on November 25, 1994, also provided that the order did not apply to Gaylord Johnson (the father of Billy Johnson) in that he was not a mover in the rule to proceed in forma pauperis. Thereafter, the sheriff's office filed a motion to show cause why Gaylord Johnson should not be required to pay the appeal costs and the judgment. After a hearing, the trial court rendered judgment, finding that the motion by the sheriff's office was moot in that Gaylord Johnson had abandoned his appeal. The judgment was signed on May 5, 1995. No appeal was taken from the trial court judgment as to the abandonment of Gaylord Johnson's appeal. Therefore, the only issues before this court are those that concern Joan Johnson (hereinafter referred to as Johnson).
On appeal, Johnson presented the following issue for review: Was it error to tell the jury that their verdict was "inconsistent" instead of telling the jury to finish answering the interrogatories?

JURY INSTRUCTIONS/INTERROGATORIES
Johnson contends that the trial court erred in advising the jury that their verdict was inconsistent. Johnson reasons that the trial judge should have advised the jury to simply complete the interrogatories.
LSA-C.C.P. art. 1792 generally addresses jury charges and provides as follows:
A. At any time during the trial, the court may instruct the jury on the law applicable to any issue in the case.
B. After the trial of the case and the presentation of all the evidence and arguments, the court shall instruct the jurors on the law applicable to the cause submitted to them.
C. This charge shall be in writing or recorded in the same manner as testimony taken in the case.
In a jury trial, the judge has a duty to charge the jury as to the law applicable in a case and the correlative right and responsibility to require that the jury get only the correct law. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 p. 35 (La.App. 1st Cir. 3/11/94), 634 So.2d 466, 488, writ denied, 94-0906 (La. 6/17/94), 638 So.2d 1094; Sparacello v. Andrews, 501 So.2d 269, 277 (La.App. 1st Cir.1986), writ denied, 502 So.2d 103 (La.1987). It is the judge's responsibility to reduce the possibility of confusing the jury, and he may exercise the right to decide what law is applicable to prevent counsel from arguing law which the trial judge deems inappropriate. Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 488; Sparacello v. Andrews, 501 So.2d at 277. The judge is not required to give the precise instruction submitted by either party, but must give instructions which properly reflect the law applicable in light of the facts of the particular case. Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 488; Manuel v. Louisiana Farm *582 Bureau Casualty Insurance Company, 563 So.2d 916, 918 (La.App. 3rd Cir.1990); Sparacello v. Andrews, 501 So.2d at 277.
A charge to the jury, even if it correctly states the law, must be based on evidence adduced in the case. Knight v. First Guaranty Bank, 577 So.2d 263, 272 (La.App. 1st Cir.), writs denied, 581 So.2d 688, 690 (La.1991). A trial judge is not required to give a charge, unless the facts support the giving of the charge. Knight v. First Guaranty Bank, 577 So.2d at 272. Adequate instructions are those instructions which fairly and reasonably point up the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1152 (La.App. 3rd Cir.1991); Sparacello v. Andrews, 501 So.2d at 277. The adequacy of jury instructions must be determined in light of the jury instructions as a whole. Doyle v. Picadilly Cafeterias, 576 So.2d at 1152.
The law also authorizes the trial court to require a jury to return only a special verdict in the form of special written findings upon each issue of fact. LSA-C.C.P. art. 1812 A. Thus, the court may submit to the jury written questions susceptible of categorical or other brief answer. Chambers v. Graybiel, 25,840 p. 6 (La.App. 2nd Cir. 6/22/94), 639 So.2d 361, 366, writ denied, 94-1948 (La. 10/28/94), 644 So.2d 377. The statute particularly authorizes the court to submit questions as to whether a party from whom damages are claimed was at fault and, if so, whether such fault was a legal cause of the damages. Chambers v. Graybiel, 639 So.2d at 366. Further, LSA-C.C.P. art. 1813 E mandates that, when the answers to interrogatories are inconsistent with each other, the court shall not direct the entry of judgment, but may return the jury for further consideration of its answers or may order a new trial. Ferrell v. Fireman's Fund Insurance Co., 94-1252 p. 7 (La. 2/20/95), 650 So.2d 742, 747; Ellis v. Allstate Insurance Company, 453 So.2d 1209, 1214 (La.App. 5th Cir.1984); Sims v. CRC Holston, Inc., 442 So.2d 646, 648-49 (La.App. 1st Cir.1983), writ denied, 446 So.2d 316 (La. 1984).
LSA-C.C.P. art. 1793 outlines the procedure by which objections to jury instructions are to be made and provides as follows:
A. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury. (emphasis added.)
This provision creates a mandatory rule for preserving an objection to a trial court's ruling regarding jury instructions. Martin v. Francis, 600 So.2d 1382, 1387 (La.App. 1st Cir.), writ denied, 606 So.2d 541 (La.1992). Moreover, an attorney must present any objection to the charge as soon as the jury has left the courtroom to begin its initial deliberations and without any undue delay. Sledge v. Continental Casualty Co., 25,770 p. 11 (La.App. 2nd Cir. 6/24/94), 639 So.2d 805, 814-15. In other words, to preserve the right to appeal a trial court's refusal to give a requested instruction or its giving of an erroneous instruction, a party must not only make a timely objection, but must state the grounds of his objection. Martin v. Francis, 600 So.2d at 1387; Cole v. Celotex Corporation, 588 So.2d 376, 380 (La. App. 3rd Cir.1991), affirmed, 599 So.2d 1058 (La.1992). See Trans-Global Alloy Limited v. First National Bank of Jefferson Parish, 583 So.2d 443, 448 (La.1991). Merely making an objection, without assigning any reasons therefor, is insufficient. Martin v. *583 Francis, 600 So.2d at 1387. See Sledge v. Continental Casualty Co., 639 So.2d at 814-15.
In Metz v. Howard, 93-726 p. 5 (La.App. 5th Cir. 1/25/94), 631 So.2d 1248, 1250-51, the jury's ultimate findings of fact were that the defendant's and his friends' actions were substandard conduct, but that this conduct was not a legal cause of the accident. On appeal, the plaintiff urged that the answers to the jury interrogatories were inconsistent and that the inconsistency should have been resolved in her favor. The appellate court determined that, whatever the merit of this assertion, plaintiff could not be heard to complain on this issue because she did not object either at the reading of the verdict or in any post-trial motions in the trial court. The appellate court noted that "the trial court, thus, never had an opportunity to take remedial action while the jury was present or otherwise rule on the question, as provided by La.Code Civ.Pro. art. 1813," citing Bourque v. Gulf Marine Transportation, Inc., 480 So.2d 337 (La.App. 3rd Cir.1985). Metz v. Howard, 631 So.2d at 1250-51.
In the instant case, we must first determine whether counsel for Johnson properly preserved Johnson's objection to the allegedly improper jury instructions. The record in the instant case is devoid of any written objection to the trial judge's jury instructions or verdict form. The court minutes of May 21, 1992, and the transcript reflect that, after closing statements by counsel, the court's charge was read to the jury. Thereafter, the jury retired to deliberate and consider their verdict. Counsel for Johnson then objected orally to the court's charge with regard to the determination of fault of the sheriff's office by the jury in a trial against the liability insurer of the sheriff's office. The objection to this instruction by the trial judge is not pertinent to the issue presented in this appeal.
After deliberating for several hours, the jury returned a verdict, finding that the seizure of Billy Johnson by the sheriff's office was unreasonable, that the sheriff's office was not negligent in its supervision of the incident surrounding Billy Johnson's death, and that the unreasonable seizure and/or negligence was the cause of Billy Johnson's death. However, the jury failed to answer the remainder of the jury interrogatories, which addressed the amount of damages sustained.
The judge then conferred with the attorneys outside the presence of the jury. Thereafter, the judge instructed the jury that some of the answers to the interrogatories were inconsistent and to return to the jury room to try to resolve those inconsistencies. Although the record does not contain a transcript of the side-bar conference or contain a transcript of the trial judge's instructions to the jury, the minutes reflect the instructions given to the jury. Moreover, it is undisputed that Johnson's counsel did not object to the instruction to the jury.
Thereafter, the jury sent a note to the judge, inquiring as to how the answers to the jury interrogatories were inconsistent. The judge again conferred with counsel for all parties and advised the jury that he could not comment on the evidence. Again, there is no transcript of the trial judge's conference with the attorneys, but the parties do not dispute what took place during the conference or that counsel for Johnson failed to object to the proposed instruction by the judge.
The jury then completed its deliberations and returned its verdict, finding that, although the sheriff's office was not negligent in its supervision of the incident surrounding the death of Billy Johnson, the sheriff's office was unreasonable in its seizure of Billy Johnson. However, the jury also determined that the unreasonable seizure was not the legal cause of Billy Johnson's death.
After reviewing the entire record in this matter, we find that Johnson's attorney failed to object so as to preserve Johnson's right to appeal the trial court's jury charge regarding the inconsistency in the verdict as originally returned by the jury. As a result, the trial court never had an opportunity to take remedial action while the jury was present or otherwise rule on the question. See Metz v. Howard, 631 So.2d at 1250-51; Bourque v. Gulf Marine Transportation, Inc., 480 So.2d at 340. Moreover, the trial judge is expressly authorized by LSA-C.C.P. art. *584 1813 E to return the jury for further deliberations or order a new trial when the answers to the jury interrogatories are inconsistent. See Magee v. Coats, 598 So.2d 531, 535-36 (La.App. 1st Cir.1992), Chambers v. Graybiel, 639 So.2d at 366, Curry v. Allstate Insurance Company, 435 So.2d 1030, 1031 (La. App. 4th Cir.1983), and Parliman v. Kennelly, 520 So.2d 445 (La.App. 5th Cir.1988).
Johnson also contends that the jury erred in failing to award damages after returning its initial verdict. Johnson reasons that it was an error of law for the jury to fail to award damages after initially finding that the seizure of Billy Johnson by the sheriff's office was unreasonable and that it was the legal cause of his death.
Jury deliberations are not complete until the jury returns its verdict to the trial judge. Even then, the judge can under certain circumstances order the jury to continue deliberations. The jury verdict is rendered only after it is returned to the court and accepted by the court. Willis v. Louisiana Power & Light Company, 524 So.2d 42, 45 (La.App. 2nd Cir.), writ denied, 525 So.2d 1059 (La.1988). See LSA-C.C.P. arts. 1812 and 1813.
In the instant case, the trial judge did not accept the jury's initial verdict because it was inconsistent. Therefore, the initial verdict was never rendered. As a result, it was not error for the trial court to fail to award damages after the jury returned its initial verdict.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of the sheriff's office and its liability insurer and against Johnson, dismissing the suit at her costs, is affirmed. Costs of this appeal are assessed against Johnson.
AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] The jury interrogatories provided as follows:

INTERROGATORY NO. 1:
Was the TERREBONNE PARISH SHERIFF'S OFFICE unreasonable in their seizure of Billy Johnson?
 YES X NO _______
 (Proceed to Interrogatory No. 2.)
INTERROGATORY NO. 2:
Was the TERREBONNE PARISH SHERIFF'S OFFICE negligent in their supervision of the incident surrounding the death of Billy Johnson?
 YES _______ NO X 
(If the answer to Interrogatory No. 1 and/or Interrogatory No. 2 is "Yes", then proceed to Interrogatory No. 3. If both the answers to Interrogatory No. 1 and Interrogatory No. 2 are both "No", then call the Bailiff; this is the end of your inquiry.)
INTERROGATORY NO. 3:
Was the unreasonable seizure and/or the negligence of TERREBONNE PARISH SHERIFF'S OFFICE a legal cause of the death of Billy Johnson?
 YES _______ NO X 
(If the answer to Interrogatory No. 3 is "Yes", then proceed to Interrogatory No. 4. If the answer to Interrogatory No. 3 is "No", then call the Bailiff; this is the end of your inquiry.)
INTERROGATORY NO. 4:
What amount of damages, if any, were sustained for the following that HUNT INSURANCE GROUP would be responsible for:
a. Past, present and future mental $________
 pain and suffering of GAYLORD
 JOHNSON
b. Past, present and future mental $________
 pain and suffering of JOAN
 JOHNSON
c. Conscious pain and suffering of $________
 Billy Johnson prior to his death
 (Proceed to Interrogatory No. 5.)
INTERROGATORY NO. 5:
Did the TERREBONNE PARISH SHERIFF'S OFFICE act willfully, deliberately, maliciously, or with reckless disregard of Billy Johnson's constitutional right against unreasonable seizure?
 YES _______ NO _______
(If the answer to Interrogatory No. 5 is "Yes", proceed to Interrogatory No. 6. If the answer to Interrogatory No. 5 is "No", proceed to Interrogatory No. 7.)
INTERROGATORY NO. 6:
What amount of punitive damages, if any, should be awarded as a result of your findings to Interrogatory No. 5?
 As to GAYLORD JOHNSON $________
 As to JOAN JOHNSON $________
 (Proceed to Interrogatory No. 7.)
INTERROGATORY NO. 7:
If your answer to Interrogatory No. 5 if "Yes", then should reasonable attorney's fees be awarded the plaintiffs?
 YES _______ NO _______